## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN THE MATTER OF<br>ARBITRATIONS BETWEEN<br><br>SEATON INSURANCE COMPANY, f/k/a<br>UNIGARD MUTUAL INSURANCE COMPANY,<br><br>Petitioner,<br><br>  and<br><br>CENTURY INDEMNITY COMPANY, as successor<br>to CIGNA SPECIALTY INSURANCE COMPANY<br>(formerly known as CALIFORNIA UNION<br>INSURANCE COMPANY); CENTURY<br>INDEMNITY COMPANY, as successor to<br>INSURANCE COMPANY OF NORTH AMERICA,<br>and CRAVENS DARGAN & COMPANY, PACIFIC<br>COAST,<br><br>Respondents. | Miscellaneous Docket<br>No. _____<br><br>**CA10- 0665** |

## COMPLAINT AND PETITION
## TO COMPEL ARBITRATION

Petitioner, Seaton Insurance Company, formerly known as Unigard Mutual Insurance Company ("Seaton"), by and through its counsel, Hinckley, Allen & Snyder, LLP, and against Respondents Century Indemnity Company, as successor to CIGNA Specialty Insurance Company (formerly known as California Union Insurance Company) ("Century/Cal. Union"), Century Indemnity Company, as successor to the Insurance Company of North America ("Century/INA"), and Cravens, Dargan & Company, Pacific Coast ("Cravens"), respectfully requests this Honorable Court for an Order compelling arbitration before an unbiased Panel in three separate arbitrations pursuant to 9 U.S.C. §§ 1, et seq.

## NATURE OF THE ACTION

1.     Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq., Petitioner seeks to

have the Court compel Respondents to proceed before an unbiased panel in the following three separate arbitrations: (1) proceedings initiated by Respondent Century/Cal. Union by demand dated November 19, 2007; (2) proceedings initiated by Respondent Century/INA by demand dated November 13, 2007; and (3) proceedings initiated by Respondent Cravens by demand dated on September 11, 2006.

2.     Pursuant to the letter and the spirit of the reinsurance agreements that are the subject of the three arbitrations, the parties are to submit all disputes regarding those agreements to a panel of three disinterested arbitrators. The process for selecting the disinterested panel is clearly set forth in the treaties, with each side appointing one arbitrator, and the arbitrators selecting the umpire. If the arbitrators cannot agree on the umpire, which is the case here, each side is to submit a slate of three candidates and the umpire will be selected from those candidates. Although Respondents initiated the three arbitrations that are the subject of this action over two years ago, they are effectively refusing to proceed with the three arbitrations because Respondents will not present Petitioner with a slate of disinterested umpire candidates.

3.     In order to get these arbitrations back on track, Petitioner seeks to have this Court to either: (a) order Respondents to submit a slate of disinterested individuals as umpire candidates in each of the three arbitrations at issue here; or (b) appoint a disinterested umpire in each of the three arbitrations.

**THE PARTIES**

4.     Petitioner is a corporation of the State of Rhode Island with its principal place of business in Warwick, Rhode Island.

5.     Upon information and belief, Respondent Century/Cal. Union is a corporation of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia,

Pennsylvania.

6.      Upon information and belief, Respondent Century/INA is a corporation of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

7.      Upon information and belief, Respondent Cravens is a corporation of the State of Delaware, with its principal place of business in Philadelphia, Pennsylvania.

8.      Century/Cal. Union, Century/INA and Cravens are all direct or indirect subsidiaries of ACE, Limited.  As such, Century/Cal. Union, Century/INA and Cravens are all affiliated and are part of the ACE Group of Companies ("ACE").

## JURISDICTION AND VENUE

9.      The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

10.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

11.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) and 9 U.S.C. § 4.

## THE REINSURANCE AGREEMENTS

**A.      The Reinsurance Agreements Between Seaton and Century/Cal. Union.**

12.     Seaton and Century/Cal. Union are parties to the following four agreements: (1) the Casualty Cession Reinsurance Agreement in effect from July 1, 1979 to January 1, 1982 (the "1979 CCR Agreement"); (2) the Casualty Cession Reinsurance Agreement in effect from January 1, 1983 to December 31, 1985 (the "1983 CCR Agreement"); (3) the Excess Reinsurance Agreement in effect from December 1, 1977 to at least January 1, 1983 (the "1977 XOL Agreement"); and (4) the First Casualty Excess of Loss Reinsurance Agreement in effect

from December 1, 1977 to January 1, 1983 (the "1977 First Casualty XOL Agreement").

13.    Under all of these agreements, Unigard Mutual Insurance Company ("Unigard") reinsures a stated percentage of the losses under casualty insurance policies underwritten by California Union Insurance Company ("Cal. Union").

14.    Seaton is the same corporation as Unigard, having changed its name to Unigard Security Insurance Company on September 30, 1984 and to Seaton Insurance Company on July 9, 1999. Seaton has all the legal rights, titles and interests of Unigard Security Insurance Company.

15.    Upon information and belief, Century/Cal. Union is the successor to Cal. Union as to all of the reinsurance agreements between Unigard and Cal Union referenced in paragraph 12.

16.    Excerpts from the 1977 CCR Agreement are attached hereto as Exhibit A.

17.    Excerpts from the 1977 XOL Agreement are attached hereto as Exhibit B.

18.    Excerpts from the 1977 First Casualty XOL Agreement are attached hereto as Exhibit C.

19.    The 1977 CCR Agreement, the 1977 XOL Agreement and the 1977 First Casualty XOL Agreement contain identical arbitration clauses, which provide, in pertinent part:

ARBITRATION

If any dispute shall arise between the Company and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, the dispute may be referred to three arbitrators, one arbitrator shall be chosen by each party and the two so chosen shall promptly select an umpire. If either party refuses of neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting arbitration and naming its arbitrator, the requesting party may name an arbitrator for the other party. If the two arbitrators fail to agree upon the selection of an umpire within thirty (30) days following their appointment, each arbitrator shall name three nominees of whom the other shall decline two and the decision shall

be made by drawing lots. Each party shall submit its case to the arbitrators within (30) days of the appointment of the umpire, unless such time is extended by the arbitrators or a majority of them or by agreement between the parties. The arbitrators shall consider this Agreement an honorable engagement rather than merely a legal obligation; they are relieved from all judicial formality and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Company and the Reinsurers. The Company and the Reinsurers shall each bear the expense of their own arbitrator or one-half of the expense of the two arbitrators if both are appointed by the requesting parties as provided above, and shall jointly and equally bear with the other the expense of the third arbitrator and the arbitration. Any such arbitration shall take place in Los Angeles, California, unless some other location is mutually agreed upon by the Company and the Reinsurers.

20.    Excerpts from the 1983 CCR Agreement are attached hereto as Exhibit D. The

1983 CCR Agreement contains an arbitration clause, which provides, in pertinent part:

<u>Arbitration Clause</u>

As a condition precedent to any right of action hereunder, any irreconcilable dispute between the parties to this Agreement will be submitted for decision to a board of arbitration composed of two arbitrators and an umpire.

Arbitration shall be initiated by the delivery of a written notice of demand for arbitration by one party to the other within a reasonable time after the dispute has arisen.

The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies, or underwriters at Lloyd's, London, not under the control or management of either party to this Agreement. Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within four weeks after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two, and the decision shall be made by drawing lots.

The claimant shall submit its initial brief within 45 days from appointment of the umpire. The respondent shall submit its brief within 45 days thereafter and the claimant may submit a reply brief within 30 days after filing of the respondent's brief.

The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing

based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The board shall make its decision within 60 days following the termination of the hearings unless the parties consent to an extension. The majority decision of the board shall be final and binding upon all parties to the proceeding. Judgement [sic] may be entered upon the final award of the board in any court having jurisdiction.

If more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purposes of this clause, and communications shall be made by the Company to each of the reinsurers constituting the one party, provided, however, that nothing herein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint. If more than one reinsurer is involved in the arbitration as respondent, the time for appointing the arbitrators will be extended to six weeks.

Each party shall pear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

**B.**     **The Reinsurance Agreements Between Seaton and Cravens.**

21.     Seaton and Cravens are parties to the following four agreements: (1) the Fire, Fire Allied Lines, Multiple Peril, Automobile Physical Damage and Inland Marine Quota Share Reinsurance Agreement on business written by the Manager's Non-Standard and Excess Department in effect from January 1, 1972 to January 1, 1982 (the "1972 Non-Standard Agreement"); (2) the Non-Standard Casualty Excess of Loss Reinsurance Agreement in effect from April 1, 1975 to January 1, 1978 (the "1975 Non-Standard Agreement"); (3) the Non-Standard Casualty Excess of Loss Reinsurance Agreement in effect from January 1, 1978 to January 1, 1984 (the "1978 Non-Standard Agreement"); and (4) the Standard Casualty Excess of Loss Reinsurance Agreement in effect from October 1, 1978 to January 1, 1984 (the "1978 Standard Agreement").

22.     Under all of these agreements, Unigard Mutual Insurance Company ("Unigard") reinsures a stated percentage of the losses under casualty insurance policies underwritten by

Cravens.

23.     Seaton is the same corporation as Unigard, having changed its name to Unigard Security Insurance Company on September 30, 1984 and to Seaton Insurance Company on July 9, 1999.   Seaton has all the legal rights, titles and interests of Unigard Security Insurance Company.

24.     Excerpts from the 1972 Non-Standard Agreement are attached hereto as Exhibit E.   The 1972 Non-Standard Agreement contains an arbitration clause, which provides, in pertinent part:

ARTICLE VII

ARBITRATION

In the event of differences arising between the contracting parties with reference with any transactions under this Agreement such differences must be submitted to arbitration upon the request of one of the contracting parties.  The Manager and the Reinsurers each shall nominate an arbitrator within thirty days and the two named shall select an umpire before entering upon the arbitration.  The arbitrators shall consider the differences between the parties and shall submit only such questions upon which they disagree to the umpire.

A decision in writing of any two of the three (two arbitrators and one umpire) when filed with the Manager and the Reinsurers shall be binding upon both.  The arbitrators and the umpire are relieved from all judicial formalities and may abstain from the strict rule of law, interpreting the present Agreement as an honorable engagement and not as a merely legal obligation.

In the event that either party fails to appoint its arbitrator within the time specified the other party shall have the right to appoint the said arbitrator forthwith.

If the arbitrators do not agree as to an umpire within thirty days of their appointment, each of them shall name three, of whom the other shall decline two, and the decision shall be made by drawing lots.  Each party shall submit its case to its arbitrator within fifteen days of appointment of the umpire or within such period as may be agreed by consent of both arbitrators, and the arbitrators and umpire shall make their award in writing within sixty days of the date on which the umpire has been named and agreed.  The said arbitrators and umpire shall be active or retired executive officers of insurance companies not under the control or management of either party to this Agreement.

7

Each party shall pay the fee of its own arbitrator and half the fee of the umpire and the remaining costs of the arbitrations shall be paid as the award shall direct.

Any arbitration shall take place in San Francisco, California, unless otherwise mutually agreed.

25.     Excerpts from the 1975 Non-Standard Agreement are attached hereto as Exhibit F.

26.     Excerpts from the 1978 Non-Standard Agreement are attached hereto as Exhibit G.

27.     Excerpts from the 1978 Standard Agreement are attached hereto as Exhibit H.

28.     The 1975 Non-Standard Agreement, the 1978 Non-Standard Agreement and the 1978 Standard Agreement contain identical arbitration clauses, which provide, in pertinent part:

ARTICLE XV - ARBITRATION

As a condition precedent to any right of action hereunder, in the event of any difference of opinion hereafter arising with respect to this contract, it is hereby mutually agreed that such dispute or difference of opinion shall be submitted to arbitration, one arbitrator to be chosen by the Reinsured, one by the Reinsurer, and an umpire, to be chosen by the two arbitrators before they enter upon arbitration.  In the event of either party refusing or neglecting to appoint an arbitrator within 90 days after the other party requests it to do so, or if the arbitrators fail to appoint an umpire within 60 days after they have accepted their appointment, such arbitrator or umpire, as the case may be, shall upon application of either party, be appointed by the Commissioner of Insurance of the State of California, and the arbitrators and the umpire shall thereupon proceed to the reference as stipulated.  The arbitrators shall consider this contract as an honorable engagement rather than merely as a legal obligation and they are relieved of all judicial formalities and may abstain from following the strict rules of the law.  The decision of the arbitrators and the decision of the majority shall be final and binding upon both parties.  Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other the expenses of the umpire and of the arbitration.  Any such arbitration shall take place at Los Angeles, California, unless some other location is mutually agreed on by the parties to this contract.

**C.     The Reinsurance Agreements Between Seaton and Century/INA.**

29.     Seaton and Century/INA are parties to the following two agreements:  (1) the

First Excess of Loss Agreement (later known as the First General Liability and Commercial Automobile Excess of Loss Agreement) in effect from May 12, 1978 to April 1, 1983 (the "1978 XOL Agreement"); and (2) the First General Liability and Commercial Automobile Excess of Loss Reinsurance Agreement in effect from April 1, 1983 to April 1, 1984 (the "1983 XOL Agreement").

30.    Under each of these agreements, Unigard Mutual Insurance Company ("Unigard") reinsures a stated percentage of the losses under casualty insurance policies underwritten by the Insurance Company of North America ("INA").

31.    Seaton is the same corporation as Unigard, having changed its name to Unigard Security Insurance Company on September 30, 1984 and to Seaton Insurance Company on July 9, 1999.  Seaton has all the legal rights, titles and interests of Unigard Security Insurance Company.

32.    Upon information and belief, Century/INA is the successor to INA as to all of the reinsurance agreements between Unigard and INA referenced in paragraph 29.

33.    Excerpts from the 1978 XOL Agreement are attached hereto as Exhibit I.

34.    Excerpts from the 1983 XOL Agreement are attached hereto as Exhibit J.

35.    The 1978 XOL Agreement and the 1983 XOL Agreement contain identical arbitration clauses, which provide, in pertinent part:

ARBITRATION

As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision to a board of arbitration composed of two arbitrators and an umpire, meeting in Philadelphia, Pennsylvania, unless otherwise agreed.

The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies, or Underwriters at Lloyd's, London, not under the control or management of either party to this Agreement.

Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within 60 days after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within 60 days after their nominations, each of them shall name three, of whom the other shall decline two, and the decision shall be made by drawing lots.

The claimant shall submit its initial brief within 45 days from appointment of the umpire. The respondent shall submit its brief within 45 days thereafter and the claimant may submit a reply brief within 30 days after filing of the respondent's brief. The periods of time may be extended by unanimous consent in writing of the board.

The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its decision in writing based upon a hearing in which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed. The board shall make its decision within 60 days following the termination of the hearings unless the parties consent to an extension. The majority decision of the board shall be final and binding upon all parties to the proceeding.

If more than one reinsurer is involved in the same dispute, all such reinsurers shall constitute and act as one party for purposes of this clause, and communications shall be made by the Company to each of the reinsurers constituting the one party, provided, however, that nothing herein shall impair the rights of such reinsurers to assert several, rather than joint, defenses or claims, nor be construed as changing the liability of the reinsurers under the terms of this Agreement from several to joint. If more than one reinsurer is involved in the arbitration as respondent, the time for appointing the arbitrators will be extended to six weeks.

Each party shall pear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceedings shall be allocated by the board.

## THE SERVICE OF THE
## ARBITRATION DEMANDS

36.     Seaton has a long, contentious relationship with the ACE affiliates, including

Century/Cal. Union, Century/INA and Cravens.

37.     One of the "flare-ups" in that relationship occurred in the late summer of 2006.

At that time, at least two ACE companies served arbitration demands against Seaton. One of

10

those demands was dated September 11, 2006 and, in it, Cravens sought to arbitration against Seaton concerning 28 different claims. The September 11, 2006 demand is attached hereto as Exhibit K.

38.   Shortly after the 2006 demands were served, Seaton and ACE attempted to informally resolve all of their differences, so they mutually agreed to stay all proceedings with respect to the September 11, 2006 demand. As a result, the parties did not appoint arbitrators in 30 or 90 days, per the requirements of the treaties at issue. Consequently, the parties did not exchange umpire candidates per the terms of the treaties at issue, and no umpire was selected.

39.   Approximately a year later, in 2007, Seaton filed a lawsuit against an ACE affiliate, seeking to have that affiliate pay a very large claim that was unquestionably valid, and that had been pending for a significant amount of time.

40.   In retaliation, ACE served a slew of demands on Seaton. In total, ACE served seven demands, including the November 13, 2007 demand served by Century/INA and the November 19, 2007 demand served by Century/Cal. Union. A copy of the November 13, 2007 demand is attached hereto as Exhibit L and a copy of the November 19, 2007 demand is attached hereto as Exhibit M. At the time, ACE also sought to revive two pending arbitration demands against Seaton that had been previously stayed, including the September 11, 2006 demand served by Cravens.

41.   ACE's newly served demands were an obvious attempt by ACE to use any balance on its books, no matter how dubious, in order to offset the amount that Seaton sought in its pending litigation. Many of the claims asserted in ACE's demands were questionable on their face because, among other things, they concerned balances: (a) that were resolved in the context of prior settlement agreements; (b) of which Seaton had no record; (c) that were subject to

outstanding inquiries by Seaton that had not been answered; and (d) that were recently submitted to Seaton and were not yet overdue.

42.   Before the end of 2007, Seaton and its affiliate served an additional two arbitration demands against ACE affiliates, and asserted a cross-demand with respect to the November 13, 2007 demand served by Century/INA. In addition, Seaton and its affiliate served two lawsuits against ACE affiliates.

## DESIGNATION OF THE INITIAL
## SLATES OF UMPIRE CANDIDATES

43.   In the 11 pending arbitrations, the parties appointed arbitrators and began the umpire selection process.

44.   To allow the parties to evaluate each other's umpire candidates and determine if any conflicts prevented any of the umpire candidates from serving, the parties agreed on a form of questionnaire and sent it to each of the umpire candidates.

45.   As of March 2008, the parties' umpire candidates had completed questionnaires in 8 of the 9 arbitrations initiated by ACE. The parties were still exchanging candidates in the two arbitrations initiated by Seaton and its affiliate. With respect to the three arbitrations that are the subject of this action, all of the questionnaires were completed, and the parties' slates of candidates were as follows:

| Arbitration | ACE's Umpire Candidates | Seaton's Umpire Candidates |
|---|---|---|
| September 11, 2006 Demand | Charles Foss<br>Michael Studley<br>Clive Becker-Jones | John W. Dattner<br>Jack Koepke<br>James Powers |
| November 13, 2007 Demand | Charles Foss<br>Michael Studley<br>Clive Becker-Jones | John W. Dattner<br>Jack Koepke<br>James Powers |
| November 19, 2007 Demand | Robert M. Hall<br>Michael Studley<br>Clive Becker-Jones | Jack Koepke<br>Klaus Kunze<br>James Powers |

## THE STAY TO NEGOTIATE
## A GLOBAL RESOLUTION

46.   In or around March 2008, Seaton and its affiliate agreed to stay all of the pending proceedings with ACE so the parties could discuss a global resolution of all of the claims pending among them. A copy of the parties' joint motion to amend the Pre-Trial Order to extend the deadlines in the Federal Court matter is attached hereto as Exhibit N.

47.   Upon the completion of the negotiations in June 2009, the parties agreed to dismiss those proceedings where the claims at issue had been completely resolved. The remaining 8 arbitrations were stayed while the parties discussed resolving the remaining balances. A copy of the parties' stipulation dismissing the Federal Court litigation filed by Seaton is attached hereto as Exhibit O. A copy of the parties' e-mail to their party-appointed arbitrators informing them of the dismissal of certain arbitrations, and the stay of others, is attached hereto as Exhibit P.

## ACE RE-STARTS THE THREE
## ARBITRATIONS AT ISSUE HERE

48.   In November 2009, ACE informed Seaton that it was changing counsel from Crowell & Moring, LLP to Gibbons, P.C. and it was seeking to re-initiate the three arbitrations that are at issue in this proceeding: (a) the September 11, 2006 demand; (b) the November 13, 2007 demand; and (c) the November 19, 2007 demand. A copy of ACE's November 9, 2009 e-mail is attached hereto as Exhibit Q.

49.   In connection with its notice of re-initiation of these 3 arbitrations, ACE sought to change the claims and balances that are at issue. An examination of the balances that ACE now seeks to recover reveals that they are subject to the same infirmities as the balances that were the subject of ACE's 2007 wave of arbitration demands.

50.   In late 2009, ACE informed Seaton that it wanted to substitute Elizabeth Thompson for Charles Foss as ACE's umpire candidate in the September 11, 2006 demand and the November 13, 2007 demand.  Presumably, ACE also wanted to substitute Ms. Thompson as its umpire candidate for Robert Hall in the November 19, 2007 demand.  A copy of ACE's December 15, 2009 e-mail is attached hereto as Exhibit R.

51.   For similar reasons, Seaton substituted John Dattner for Klaus Kunze as its umpire candidate with respect to the November 19, 2007 demand.  A copy of Seaton's January 4, 2010 e-mail is attached hereto as Exhibit S.

52.   Therefore, as of January 2010, the parties' umpire candidates stood as follows:

| Arbitration | ACE's Umpire Candidates | Seaton's Umpire Candidates |
|---|---|---|
| September 11, 2006 Demand | Elizabeth Thompson Michael Studley Clive Becker-Jones | John W. Dattner Jack Koepke James Powers |
| November 13, 2007 Demand | Elizabeth Thompson Michael Studley Clive Becker-Jones | John W. Dattner Jack Koepke James Powers |
| November 19, 2007 Demand | Elizabeth Thompson Michael Studley Clive Becker-Jones | John W. Dattner Jack Koepke James Powers |

## ACE'S CONFLICTED UMPIRE CANDIDATES

53.   Because of the changes in counsel and certain umpire candidates, the parties agreed to request a new set of completed questionnaires.  The new questionnaires were completed in late January and early February 2010.

54.   Mr. Studley's completed questionnaire is attached hereto as Exhibit T, and it reveals that he has recently served as ACE's party-appointed arbitrator.  In 2006, he served as ACE's party-appoint arbitrator in two matters that concluded in a final arbitration award.  As recently as 2009, Mr. Studley served as ACE's party appointed arbitrator in another matter.

55.   Ms. Thompson's completed questionnaire is attached hereto as Exhibit U, and it

reveals ACE frequently designates her as an umpire candidate, and she is closely associated with ACE's party-appointed arbitrator, Mr. Daniel Schmidt.  According to her questionnaire, Ms. Thompson has served as an umpire in matters involving ACE affiliates no fewer than 11 times, and several of those matters are still pending.  In addition, Ms. Thompson has been an umpire in four matters in which Mr. Schmidt served as a party-appointed umpire.

56.    Mr. Becker-Jones' completed questionnaire is attached hereto as Exhibit V, and it reveals that he has been a party-appointed arbitrator for ACE as recently as 2007.  Like Ms. Thompson, ACE also frequently designates him as an umpire candidate.  He has been appointed umpire in 9 matters involving ACE affiliates, three of which are still pending.  In addition, he was appointed umpire in a matter between Cravens and Seaton that settled in 2009.

57.    In February 2010, Seaton wrote to ACE and informed it that its designation of these candidates violated both the letter and spirit of the treaties at issue, which require a neutral arbitrator.  Seaton requested that ACE designate candidates that had not previously served at its party-appointed umpire.  A copy of Seaton's February 1, 2010 e-mail is attached hereto as Exhibit W.

58.    ACE refused to alter its slate of umpire candidates and, thereby, has effectively refused to proceed with the arbitration in this matter because it will not allow the appointment of a neutral umpire.

## COUNT I
### (Relief Pursuant to 9 U.S.C. §4)

59.    Seaton incorporates herein by reference the allegations of paragraphs 1 through 58 above as if fully set forth herein.

60.    Because ACE failed to designate a slate of disinterested umpire candidates as required by the letter and spirit of the reinsurance treaties, it has effectively refused to arbitrate

the three matters at issue.

61.   Pursuant to Sections 4 of the Federal Arbitration Act, 9 U.S.C. § 4, Seaton is

entitled to an order:

    a.  With respect to the September 11, 2006 demand, compelling Cravens, Dargan & Company, Pacific Coast to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceedings involving ACE.

    b.  With respect to the November 13, 2007 demand, compelling Century Indemnity Company as successor to Insurance Company of North America to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceedings involving ACE.

    c.  With respect to the November 19, 2007 demand, compelling Century Indemnity Company as successor to CIGNA Specialty Insurance Company (formerly known as California Union Insurance Company) to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceeding involving ACE.

## COUNT II
### (Relief Pursuant to 9 U.S.C. § 5)

62.   Seaton incorporates herein by reference the allegations of paragraphs 1 through

61 above as if fully set forth herein.

63.   Because ACE failed to designate a slate of disinterested umpire candidates as

required by the letter and spirit of the reinsurance treaties, it has effectively refused to arbitrate

the three matters at issue.

64.   Pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, Seaton is

entitled to an order:

    a.  Designating a neutral umpire with respect to the September 11, 2006 demand served by Cravens, Dargan & Company, Pacific Coast.

    b.  Designating a neutral umpire with respect to the November 13, 2007 demand served by Century Indemnity Company as successor to Insurance Company of North America.

   c.   Designating a neutral umpire with respect to the November 19, 2007 demand served by Century Indemnity Company as successor to CIGNA Specialty Insurance Company (formerly known as California Union Insurance Company).

**WHEREFORE**, Petitioner, Seaton Insurance Company, prays that an order be entered:

A.     With respect to the September 11, 2006 demand, either (a) appointing a neutral umpire; or (b) directing Cravens, Dargan & Company, Pacific Coast to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceedings involving ACE;

B.     With respect to the November 13, 2007 demand, either (a) appointing a neutral umpire; or (b) directing Century Indemnity Company as successor to Insurance Company of North America to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceedings involving ACE;

C.     With respect to the November 19, 2007 demand, either (a) appointing a neutral umpire; or (b) directing Century Indemnity Company as successor to CIGNA Specialty Insurance Company (formerly known as California Union Insurance Company) to designate a slate of disinterested umpire candidates who have not previously served as ACE's party-appointed arbitrator or as an umpire in prior proceeding involving ACE;

D.     Awarding Seaton attorneys' fees, costs of suit, sanctions and such other further relief as the Court may deem just and proper; and

E.     Seaton shall submit an affidavit of attorneys' fees and costs within fifteen (15) days of the Court's order, with the Court to fix the amount of fees and costs to be awarded in a subsequent Order.

17

SEATON INSURANCE COMPANY f/k/a
UNIGARD MUTUAL INSURANCE COMPANY

Respectfully submitted by its attorneys,

Gerald J. Petros (#2931)
Alexandra K. Callam (#5358)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903
Phone: (401) 274-2000
Fax: (401) 277-9600
gpetros@haslaw.com
acallam@haslaw.com

and

Joseph J. Schiavone
Mark D. Hoerrner
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, New Jersey 07078
Phone:  (973) 379-4800
Fax:  (973) 379-7734

DATED:  February 18, 2010